[No. 576-41316-1.   Division One—Panel 1.   December 28, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. RODNEY B. MAHAFFEY, *Appellant*.

*David Beitz,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Kenneth Sharaga, Deputy,* for respondent.

JAMES, C. J.—On January 9, 1969, Rodney Mahaffey shot and killed David C. Brown.

Throughout the year of 1968, a group of about 10 Bellevue families, including Rodney Mahaffey, his wife and daughter, met regularly with the view of establishing a church. With David C. Brown as its first pastor, the Bellevue Bible Presbyterian Church was formally organized on September 21, 1968. A meeting was scheduled for November 23 for the purpose of considering proposed bylaws. At that meeting, attended by the Mahaffey family, Pastor Brown read a letter of November 21 which he had sent to Mahaffey. The letter advised Mahaffey that it had become apparent to the organization committee of the presbytery that "you are not willing to submit to the discipline and leadership of the church, and that you intend to disrupt the orderly procedure of completing the church organization." The letter further stated that Mahaffey's membership was revoked until he could satisfy the committee of his willingness to submit to the discipline and leadership of the church. The memberships of Mahaffey's wife and daughter were not revoked.

Thereafter, at the request of Mahaffey, William McClelland, an elder of the newly founded church, arranged for a meeting at which Pastor Brown and Elder McClelland would discuss with Mahaffey his desire to be not only a member but an elder of the church.

Prior to the meeting, Mahaffey sent Elder McClelland a

folder containing copies of letters he had addressed to the "Gentlemen of the Session Court for the Bellevue Church" and questionnaires addressed to the "Session." His covering letter to Elder McClelland stated that "I feel I am going into a hostile situation, and in which the Devil and his demons are active in Christians."

The meeting took place in the kitchen of the McClelland home on the evening of January 9, 1969. It was there that the homicide occurred. Mahaffey was charged by information filed on January 15, 1969, with murder in the first degree.

At Mahaffey's request and upon his showing that he was indigent, two attorneys were appointed to represent him.

The transcript reveals that on March 18 Mahaffey's counsel obtained an order providing for a psychological examination "necessary to [his] defense." No report of the psychologist's findings appears in the record on appeal.

The transcript also discloses that, apparently at the request of the prosecuting attorney and at some time coincident with the first trial, Mahaffey was examined by a psychiatrist.[1] No report of the psychiatrist's findings appears in the record on appeal.

Mahaffey entered a plea of not guilty and a special plea of not guilty because of "mental irresponsibility existing at the time of the alleged crime." The special plea, dated January 30, 1969, further states: "The mental irresponsibility does not exist now since the defendant has become mentally responsible in between the time of the alleged commission of the crime and the present."

On April 23, 1969, Mahaffey was found guilty of murder in the first degree. Thereafter the trial judge, having been persuaded that he erred in refusing to give a requested instruction, granted a new trial. At the same time, Mahaffey's trial counsel were permitted to withdraw. The judge

---

[1]The record discloses only that the state was authorized by the judge who presided at the first trial to compensate the psychiatrist for his services.

who presided at the first trial did not participate further in the case.

Another attorney was appointed to represent Mahaffey at the second trial. Subsequent to his appointment, the attorney advised the court that Mahaffey had arranged for his compensation, and his status thereafter was that of retained counsel.

At the conclusion of the second trial on the 21st day of August, 1969, the jury found Mahaffey not guilty of murder in the first degree but guilty of murder in the second degree. After motions in arrest of judgment and for a new trial had been denied, and after the giving of notice of appeal, Mahaffey's trial counsel was permitted to withdraw and the trial judge appointed two attorneys to prosecute an appeal. These attorneys subsequently advised the trial judge that they found it impossible to secure any meaningful cooperation from Mahaffey, and they were permitted to withdraw. Thereafter Mahaffey's present counsel on appeal was appointed. He prosecuted the appeal, submitted a written brief, and made the oral argument on Mahaffey's behalf.

Though confined in the penitentiary at Walla Walla, Mahaffey has insisted upon his right to prosecute his own appeal and has taken the position that his court appointed counsel on appeal does not represent him. Mahaffey was not permitted to discharge his attorney, but he was permitted to file written briefs on his own behalf.

Counsel on appeal first assigns error to the denial of Mahaffey's motion for a change of venue or in the alternative for a continuance. In support of this assignment, counsel has provided us by way of the transcript a copy of trial counsel's affidavit in which he lists 26 newspaper stories which commence with a January 11 account of the homicide with pictures of Mahaffey and Pastor Brown, and which conclude with the story of June 17 reporting that new counsel has been appointed for Mahaffey. The affidavit also refers to radio newscasts which frequently concerned the homicide.

■ . We have carefully reviewed the record and are satisfied that counsel's first assignment of error is not well taken. As in *State v. Valenzuela,* 75 Wn.2d 876, 454 P.2d 199 (1969), the only basis upon which the trial court could conclude that Mahaffey could not receive a fair trial in King County is the affidavit of his trial counsel and in this case as in *Valenzuela,* "There is neither record of the voir dire examination of the jury nor is there any evidence which would indicate that the prejudice in the community, or of individual jurors, was such as to deny the defendant a fair and impartial trial by jury." *State v. Valenzuela, supra* at 880.

The right to a change of venue on the ground that a fair trial cannot be had in the county where the action is pending is provided by RCW 10.25.070. The denial of a motion for a change of venue will not be disturbed on appeal unless it is established that there was a manifest abuse of discretion by the trial court. *State v. Valenzuela, supra.* Again as stated in *Valenzuela,* "Defendant [has] the burden of showing that he could not obtain a fair and impartial jury trial and that the trial court [has] abused its discretion in refusing to grant the motion for change of venue." *State v. Valenzuela, supra* at 881. The trial judge did not err in denying Mahaffey's motion.

The principal assignment urged by counsel on appeal is that the trial judge erred in failing to conduct an inquiry into Mahaffey's competence to stand trial. We find this assignment to be well taken.

■■ The conviction of an accused person who is not "competent to stand trial" violates his constitutional right to a fair trial under the Fourteenth Amendment's due process clause. *Pate v. Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); *State v. Wilks,* 70 Wn.2d 626, 424 P.2d 663 (1967). Although there is no Washington statute establishing procedures,[2] it has long been recognized that the

---

[2]Washington appears to be the only state without a statutory provision defining the test of competency to stand trial. *See* A. Goldstein, The Insanity Defense (1967), and R. James, The Jury and the Defense of Insanity (1967), *reviewed,* Morris, 43 Wash. L. Rev. 623 (1968).

trial court is possessed of the inherent power and jurisdiction to conduct a hearing at any stage of a trial. *State ex rel. Mackintosh v. Superior Court,* 45 Wash. 248, 88 P. 207 (1907).

It is not the "M'Naghten's Case, 10 Clark & F. 200" test of insanity—the ability to distinguish between right and wrong—which must be applied. *State v. Henke,* 196 Wash. 185, 189, 82 P.2d 544 (1938). A defendant's competency to stand trial is to be pragmatically tested by evaluating his capacity to understand his peril and to rationally assist his counsel in his defense. *Dusky v. United States,* 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960).

The record brought to us discloses that after the jury had been impanelled and before any evidence was introduced, Mahaffey attempted to dismiss his trial counsel. He was not permitted to do so and his request for a continuance to procure other counsel was refused. The incident was precipitated by Mahaffey's insistence, over the objection of his counsel, that he be permitted to withdraw the special plea of not guilty by reason of insanity. Over the objection of his trial counsel, Mahaffey was permitted to withdraw the plea. Counsel then requested a competency hearing. The trial judge denied the request, saying, "Well, there has been some inquiry made in that area, and I am ready to abide by it."

We must assume that the judge alluded to the psychiatric examination secured by the state in connection with the first trial.[3]   Significantly, on the morning of the third day of trial the prosecuting attorney suggested that it might be

---

[3]At a conference in chambers, Mahaffey insisted that his trial counsel call certain witnesses. Counsel strenuously objected, it being his opinion that their testimony would hurt rather than help Mahaffey. When counsel again, as he had by this time on several occasions, repeated his request for a competency hearing, the judge said:

He is not mentally ill. He is a spoiled kid, but he is not mentally ill. Dr. Jarvis's statement of him, I thought, was pretty good. I see nothing to the contrary. Just because he is acting like he does doesn't mean he is crazy. It just means he is spoiled, but we can't change that.

Dr. Jarvis is the psychiatrist compensated by the state.

advisable to hold a competency hearing.[4] Again the judge declined, saying,

> I see nothing to indicate any incompetency in this case. The defendant seems to be quite able to participate in the trial. He is alert, sharp, not scattered, maybe a little over-talkative, but that hasn't anything to do with his being crazy. You will proceed.

When defense counsel supported the prosecuting attorney's request for a competency hearing, the judge observed that Mahaffey had already been examined. When counsel pointed out that any such examination would have occurred more than a year ago, Mahaffey himself interrupted to say, "I beg your pardon. This is jeopardizing me. It is damaging. We have gone over this. I want him to shut up, and I want to stop him. Can I ask an order on that?"

Throughout the record of the trial, and in numerous communications to the trial and appellate courts, and in his pro se briefs, Mahaffey manifests an unremitting fear of being adjudged insane. The record reflects many instances of Mahaffey's frustrating refusal to follow his counsel's advice. We find that Mahaffey's conduct before, during, and after both trials is sufficient to create doubt concerning his capacity to understand his peril and to rationally assist his trial counsel.

In the absence of statutory guidance and applying common law principles, the early decisions of the Washington Supreme Court placed heavy reliance upon the trial judge's discretion when a criminal defendant's competency to stand trial was at issue. *State v. Schrader,* 135 Wash. 650, 238 P. 617, 243 P. 10 (1925). Recent cases substantially limit the trial judge's discretion. If a " 'substantial question of *possible* doubt . . .' " is raised, an "inquiry into the defendant's competency . . ." *must* be made. (Italics ours.) *State v. Tate,* 74 Wn.2d 261, 264, 444 P.2d 150 (1968); *see also State v. Tate,* 1 Wn. App. 1, 458 P.2d 904 (1969). The

---

[4] From the prosecution's point of view, a competency hearing may have tactical as well as practical usefulness. A. Goldstein, The Insanity Defense (1967), and R. James, The Jury and the Defense of Insanity (1967), *reviewed,* Morris, 43 Wash. L. Rev. 623, 630 (1968).

practice in Washington now substantially parallels the statutory rule[5] in federal courts. *Rhay v. White,* 385 F.2d 883 (9th Cir. 1967); *State v. Wilks, supra.* An accused's "demeanor at trial" cannot be relied upon to dispense with a hearing if there is other evidence of lack of competency. *Pate v. Robinson, supra* at 386.

We hold that a request for a competency hearing by defense counsel should be granted unless it clearly appears that the request is frivolous and not made in good faith. Under the federal rule a good faith request *must* be granted.

> Except where it is possible to hold that the ground stated for belief is frivolous, or where otherwise, on the face of elements in the situation which the court may judicially notice, it can be said that the motion is not made in good faith, the mandate of the statute appears to be absolute in its preliminary requirement—"the court shall cause the accused . . . to be examined as to his mental condition by at least one qualified psychiatrist".

*Krupnick v. United States,* 264 F.2d 213, 216 (8th Cir. 1959). The question before an appellate court is

> whether, no less on *hindsight* than by foresight, there were elements of such indication in the situation as, if proper notice had been taken of them, could present a substantial question of possible doubt as to [defendant's] competency to stand trial.

(Italics ours.) *Rhay v. White, supra* at 886. The trial judge, of course, has not seen Mahaffey's pro se briefs nor his communications to the appellate court. Viewed from our vantage point, the efforts of trial counsel to obtain a competency hearing were not frivolous. His request should have been granted.

■ Mahaffey's pro se briefs make a number of assignments of error. Included among them is the denial of the motion for change of venue. We have found this assignment to be without merit. Mahaffey questions the giving of and failure to give a number of instructions. No exceptions

---

[5] 18 U.S.C. §§ 4244-46 (1964).

were taken at trial. Claims of error as to instructions given or refused will not be considered for the first time on appeal unless a constitutional right has been invaded. *State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968). We have reviewed the questioned instructions and find that constitutional rights are not involved. Nor can we conclude that the trial judge's rulings on instructions resulted in an obvious and manifest injustice to Mahaffey. *State v. Robinson,* 78 Wn.2d 479, 475 P.2d 560 (1970).

At Mahaffey's insistence, his wife was permitted to testify that he had a permit to carry a concealed weapon. He assigns as error the refusal of his offer of copies of letters attesting his good character written by friends to support his application for the permit. The claim of error is without merit.

Finally, Mahaffey says that his trial attorney intimidated and damaged him. Our reading of the record and of Mahaffey's briefs persuades us that, in fact, Mahaffey damaged himself and frustrated his attorney's earnest and well-conceived efforts to afford him an effective defense. On one occasion the trial judge urged Mahaffey to realize that his attorney was "endeavoring to defend [him] to the best of his ability under extremely trying circumstances."

We find no merit in any of Mahaffey's claims of error.

■ Pursuant to the procedure approved in *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968), we remand the case for appropriate proceedings and the taking of testimony to determine whether Mahaffey was competent to stand trial. The record of the trial and Mahaffey's letters and briefs which are a part of the record on appeal should be considered by any expert whose opinion is sought.

Having found no error except for the failure to hold a competency hearing, the verdict of guilty shall stand if it is found that Mahaffey was competent to stand trial. In the event that it is found that Mahaffey was not competent to stand trial, or if it cannot be determined whether he was or was not competent as of the time of trial, the judgment and

sentence shall be vacated and a new trial held, if and when the defendant is found to be competent to stand trial.

SWANSON and WILLIAMS, JJ., concur.

Petition for rehearing denied February 4, 1971.

Review denied by Supreme Court March 2, 1971.